IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JESSE D. MCGOWAN                                                                                               PLAINTIFF

v.                                         Civil No. 11-2038

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                           DEFENDANT

**MEMORANDUM OPINION**

I.      **Factual and Procedural Background**

Plaintiff, Jesse D. McGowan, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

Plaintiff protectively filed his DIB and SSI applications on October 27, 2008, alleging disability as of April 1, 2008,[1] due to eye pain, poor vision, and arthritis pain in his arm, shoulder, back, knees, and neck. Tr. 10, 140, 144. On the alleged onset date, Plaintiff was fifty years old with a ninth grade education. Tr. 17, 31-32, 147, 215. He has past relevant work as a truck driver. Tr. 17, 32, 46-47, 145-146, 148, 150-153, 184.

Plaintiff's application was denied at the initial and reconsideration levels. Tr. 55-61, 63-67. At Plaintiff's request, an administrative hearing was held on December 11, 2009. Tr. 26-50. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable

---

[1] Plaintiff initially alleged disability beginning January 1, 1982. Tr. 10. During the administrative hearing, Plaintiff and his attorney moved to amend the alleged onset date to April 1, 2008. Tr. 10. The ALJ granted Plaintiff's motion. Tr. 10.

decision on March 24, 2010, finding Plaintiff was not disabled within the meaning of the Act. Tr. 7-19. Subsequently, the Appeals Council denied Plaintiff's Request for Review on February 11, 2011, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks judicial review of that decision.

## II.   Medical History

Plaintiff was treated at The Eye Group for eye pain. Tr. 214-230. A 2001 MRI of Plaintiff's head revealed chronic sinusitis, but no evidence of ocular pathology that would account for his pain. Tr. 217-218, 222. Kenneth K. Wallace, M.D., felt Plaintiff should see an ENT specialist. Tr. 218. On April 16, 2009, Plaintiff had normal confrontational visual fields, with corrected visual acuity of 20/40 in both eyes. Tr. 216.

On February 4, 2009, Plaintiff saw Stanley L. Reyenga, M.D., for a consultative physical examination. Tr. 191-195. Plaintiff complained of arthritis, chronic left arm and shoulder pain, low back pain, neck pain, left knee pain, and poor vision. Tr. 191. On examination, Plaintiff was 5'10" and weighed 192 pounds. Tr. 192. Plaintiff's corrected vision was 20/30 in his right eye and 20/40 in his left eye. Tr. 192. His confrontational fields were normal, and Dr. Reyenga found no evidence of neovascularization, hemorrhages, exudates, or papilledema. Tr. 192. Plaintiff had normal passive range of motion in his shoulders, elbows, wrists, hands, hips, knees, and ankles. Tr. 193. He also had normal range of motion in his cervical and lumbar spine. Tr. 193. Straight-leg raising was negative on both sides. Tr. 194. No muscle spasms, weakness, or atrophy were noted. Tr. 194. Plaintiff was able to hold a pen and write, grip with full strength, touch his fingertips to his palm, oppose his thumb to his fingers, pick up a coin, stand/walk without assistive devices, walk on his heels and toes, and squat/arise from a squatting position. Tr. 194. He had normal circulation with

no signs of edema. Tr. 195.

X-rays of Plaintiff's lumbar spine revealed moderate osteophytic ridging, but the disc spaces were well-maintained. Tr. 195. X-rays of Plaintiff's left shoulder were normal. Tr. 195. X-rays of Plaintiff's left knee revealed an intramedullary rod in his femur from prior surgery and narrowed joint space. Tr. 195. Dr. Reyenga diagnosed Plaintiff with chronic lumbar back pain, chronic left shoulder pain, chronic left knee pain, chronic neck pain, and decreased visual acuity. Tr. 195.

In February 2009, Ronald Crow, M.D., an agency specialist, reviewed Plaintiff's medical records and determined his impairments were non-severe. Tr. 196, 203.

On March 31, 2009, Plaintiff presented to Good Samaritan Clinic with complaints of left arm and shoulder pain, neck pain, knee pain, and eye pain. Tr. 200. Plaintiff was not taking any medication due to cost. Tr. 200. On examination, Plaintiff had a prominent left AC joint, ascites/obesity of the abdomen, and a "disturbed" gait. Tr. 200. Plaintiff was diagnosed with arthritis and prescribed Meloxicam. Tr. 200. Laboratory results showed Plaintiff's SED rate, ANA titers, and rheumatoid factor be within normal range. Tr. 207-210.

On May 27, 2009, Plaintiff complained of left shoulder pain with no improvement on Meloxicam. Tr. 206. Plaintiff's weight was at 196 pounds. Tr. 206. On examination, Plaintiff had full passive range of motion in his upper extremities with pain on rotation. Tr. 206. He was given a pain injection in his left shoulder. Tr. 206.

On October 22, 2009, Plaintiff complained of right foot pain. Tr. 251. At the time of evaluation, Plaintiff weighed 206 pounds. Tr. 252. On examination, pedal pulses and sensation were intact and no obvious deformities were noted, although the distal joint of Plaintiff's large toe appeared slightly large. Tr. 251. Plaintiff was assessed with arthritis, rule out gout, and given a

prescription for Meloxicam. Tr. 251. Laboratory results revealed that Plaintiff's uric acid level was within normal limits. Tr. 253.

On October 30, 2009, Plaintiff saw Ronald Myers, M.D., for a consultative physical evaluation. Tr. 245-249. On examination, Plaintiff had limited range of motion in his cervical and lumbar spine as well as his left shoulder. Tr. 248. Dr. Myer noted muscle spasms, but found no evidence of muscle weakness, atrophy, or sensory abnormalities. Tr. 249. Plaintiff's limb function was within normal limits, and he was able to hold a pen and write, touch his fingertips to his palm, grip, oppose his thumb to his fingers, stand and walk without assistive devices, walk on his heels and toes, and squat and arise from a squatting position. Tr. 249.

Dr. Myers completed a Medical Source Statement ("MSS"), in which he determined Plaintiff could sit for forty five minutes at a time, stand for forty five minutes at a time, and walk for one hour at a time, sit for a total of two hours in an eight-hour workday, stand for a total of two hours in an eight-hour workday, and walk for a total of three hours in an eight-hour workday, and occasionally lift/carry up to ten pounds. Tr. 245-249. He found Plaintiff could use both hands for simple grasping, pushing/pulling, and fine manipulation, and could occasionally bend, squat, crawl, climb, reach above head, stoop, and crouch, but never kneel, and occasionally tolerate unprotected heights, moving machinery, marked temperature changes, driving automotive equipment, dust, fumes, gases, and noise. Tr. 245-249. Dr. Myers found Plaintiff's level of pain to be severe, although he stated Plaintiff could not afford diagnostic testing. Tr. 246. He determined Plaintiff would need unscheduled breaks and would likely miss more than four workdays per month. Tr. 247.

**III.     Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner

to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.   Discussion

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since April 1, 2008, the amended onset date. Tr. 12. At step two, the ALJ found Plaintiff suffered from back disorder, osteoarthritis, obesity, and decreased vision, all of which were considered severe impairments under the Act. Tr. 12. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 12-13.

At step four, the ALJ found Plaintiff had the RFC to frequently lift/carry ten pounds, occasionally lift/carry twenty pounds, sit/stand/walk for about six hours in an eight-hour workday, occasionally reach overhead and climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. Tr. 13-17. Additionally, the ALJ determined Plaintiff must avoid concentrated exposure to dusts, fumes, gases, odors, and poor ventilation, and must perform work that does not require excellent far visual acuity. Tr. 13-17.

Based on these limitations, the ALJ determined Plaintiff was unable to perform his past relevant work. Tr. 17. However, after receiving vocational expert testimony, the ALJ found jobs

existing in significant numbers in the national economy that Plaintiff could perform.[2] Tr. 18. Accordingly, the ALJ determined Plaintiff was not under a disability from April 1, 2008, the amended alleged onset date, through March 24, 2010, the date of the decision. Tr. 18-19.

On appeal, Plaintiff contends the ALJ: (1) improperly determined his RFC; and (2) failed to fully develop the record. *See* Pl.'s Br. 9-14. For reasons discussed below, the court finds Plaintiff's argument has no merit.

A. RFC Determination

At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

Plaintiff contends the ALJ should have afforded more weight to Dr. Myers' MSS. *See* Pl.'s Br. 9-11. On the contrary, Dr. Myers was not a treating physician, and thus his opinion was entitled to no special deference. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (the assessment of a

---

[2] The ALJ determined Plaintiff could perform the requirements of representative occupations such as cashier II, of which there are 8500 jobs regionally and 967,000 jobs nationally, fast food worker, of which there are 14,000 jobs regionally and 1,938,000 jobs nationally, and small products assembler, of which there are 950 jobs regionally and 108,500 jobs nationally. Tr. 18, 47-50.

doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence). Moreover, Dr. Myers' highly restrictive findings are internally inconsistent as well as inconsistent with the medical evidence as a whole. *Weaks v. Shalala*, 12 F.3d 1104 (8th Cir. 1993) (consultative physician's opinion was inconsistent with his own clinical findings). Unlike Dr. Reyenga, Dr. Myers did not perform any x-rays or other imaging studies to determine the extent and severity of Plaintiff's limitations. X-rays of Plaintiff's lumbar spine, dated February 4, 2009, revealed moderate osteophytic ridging, but disc spaces were well-maintained. Tr. 195. X-rays of Plaintiff's left shoulder were normal. Tr. 195. X-rays of Plaintiff's left knee revealed narrowed joint space, but were otherwise normal. Tr. 195. These findings are simply inconsistent with Dr. Myers' overly restrictive MSS.

Additionally, Dr. Myers' evaluation was not for treatment purposes and relied heavily on Plaintiff's subjective complaints rather than objective findings. *See Page v. Astrue,* 484 F.3d 1040, 1043 -44 (8th Cir. 2007); *Shannon v. Chater,* 54 F.3d 484, 486 (8th Cir.1995) (doctor's visit linked primarily to obtaining benefits rather than medical treatment); *see also Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011) (physician's medical source statement was based on claimant's subjective complaints rather than objective or clinical findings). Finally, Plaintiff received no treatment from March 2006 until March 2009. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) ("a claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications"). Although Plaintiff stated he could not afford treatment, he was treated at Good Samaritan Clinic, a low-income medical facility, in both 2006 and 2009, and has provided no explanation as to why he could not obtain the same low-cost treatment during this three year interval. Tr. 199-201, 204-212, 250-253. For these

reasons, the court finds the ALJ properly weighed the evidence in determining Plaintiff's RFC. Accordingly, substantial evidence supports the ALJ's RFC determination.

Plaintiff argues that the ALJ's hypothetical question did not accurately reflect his limitations. *See* Pl.'s Br. 12-13. However, this section of Plaintiff's brief merely reiterates his RFC argument. A hypothetical question posed to the VE is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)). Here, the ALJ's hypothetical to the VE was proper, as it mirrored the limitations adopted by the ALJ. *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996). The ALJ may properly exclude, as he did in this instance, any alleged limitation or impairments he rejects as untrue or unsubstantiated. *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001). Accordingly, substantial evidence supports the ALJ's hypothetical question.

### B. Development of the Record

Plaintiff argues the ALJ should have sent Plaintiff for a consultative visual examination. *See* Pl.'s Br. 11-13. The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician." *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately

develop the record; the determination must be made on a case by case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

The ALJ fulfilled his duty to fully and fairly develop the record concerning Plaintiff's visual impairments. Plaintiff did not seek eye treatment from April 2001 until April 2009. *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (ALJ may discount a claimant's complaints based on a failure to pursue regular medical treatment); *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003) (while it is the ALJ's duty to develop the record, he is under no duty to provide continuing medical treatment for the claimant). In February 2009, Plaintiff was sent for a consultative physical examination at the expense of the Social Security Administration. Tr. 191-195. Plaintiff's corrected vision was 20/30 in his right eye and 20/40 in his left eye. Tr. 192. His confrontational fields were normal, and Dr. Reyenga found no evidence of neovascularization, hemorrhages, exudates, or papilledema. Tr. 192. Furthermore, medical records from The Eye Group, dated April 16, 2009, revealed that Plaintiff had normal confrontational visual fields, with corrected visual acuity of 20/40 in both eyes. Tr. 216.

Here, the ALJ had sufficient evidence to rely on in making his RFC determination. *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (rejecting argument that ALJ failed to fully and fairly develop the record where there was no indication that the ALJ was unable to make RFC assessment). Moreover, Plaintiff has demonstrated no prejudice or injustice as a result of this alleged failure to develop the record. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (unfairness or prejudice is necessary for a reversal due to failure to develop the record). Accordingly, the undersigned finds that the ALJ satisfied his duty to fully develop the record.

## V.     **Conclusion**

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

IT IS SO ORDERED this 23th day of January 2012.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE